Good morning, Your Honors. May it please the Court, Chris DeHart on behalf of Shawn Christy. I would like to reserve two minutes for rebuttal. The first issue here is did the district court delegate its duty in allowing the probation officer to determine the length of the sentence? And here I think we have to look to 3553 to determine whether the court did that. Well, yeah, I've got to quarrel with your premise. I think if the district judge had delegated to the probation officer the ability to determine the length of the sentence, that would create a different problem than the one we have now. As I read it, you can talk me out of this and you may wish to try to do that. As I read what went on here, the district judge is giving to the probation officer the power to make a recommendation. Now, it may turn out that the recommendation is very powerful, they very often are, but I don't think the probation officer gets to sign a piece of paper and says you're done. Well, there is nothing in here that says that the probation officer is supposed to come back to the court to seek permission to do what it is or that there's any notice of a hearing or what type of hearing there would be. So I'm not sure where. But as a practical matter, the probation officer could not by writ or document or anything else affect the release of this prisoner. There's simply no authority whatsoever for that to happen. It appears in this case that that could happen because the way that the court worded the order is, as he said, it would be up to 180 days and it's at the probation officer's discretion. If Mr. Christie can establish for the probation officer that he is succeeding in whatever, it's not clear what he's supposed to do to satisfy the probation officer that he could get out of this custodial setting. I'm reading the document. The defendant shall reside in a residential re-entry treatment, specifically the Scranton Catholic Charity Center, Scranton, for a period of up to 180 days commencing at the direction of the probation officer. But I think the probation officer gets to decide when it starts. I see nothing in there that tells us the probation officer gets to decide when it ends. Well, Your Honor, I think if you look at the oral pronouncement of judgment. Oh, he did say something orally, but it seemed to me just kind of words were floating around a little bit. He said a number of things orally, including there's a possibility that probation can recommend that you be terminated early from probation. Wasn't it really clear reading it objectively and in a common sense way what the court intended? No, Your Honor, because a termination from probation is a significantly different procedure that is actually accounted for within the statute of what the burden is, what the procedures are, what hearings would be allowed. There is no such similar situation in this scenario that we have here, the up to 180 days. There is nothing in either the guidelines or the statutes which account for this type of procedure. And as far as I could tell, I've never found any case on point which would establish that or which would give anyone any guidance for how to proceed this way. Counsel, can I just ask a legal question? If there's a conflict between the oral pronouncement and the written pronouncement, what controls? The oral. Okay. So you're relying on what, the written or the oral? The oral predominantly. Okay. And in the oral, he says after the discussion amongst counsel about shortening the five-year probation period, the court does say there's a possibility that probation can recommend that you be terminated early from probation. So that's the five-year period, correct? Correct. And then it goes on to discuss community confinement and says, the defendant shall reside in a residential reentry center for up to 180 days. And saying, up to, because if the probation officer thinks you're making sufficient progress, he or she can approve your release sooner than 180 days. Correct. Okay. So you're saying that's not a delegation, improper delegation? I'm saying that is an improper delegation because right there he is saying the probation officer can, quote, unquote, approve it. He's not directing. Approve getting out earlier. It's not the beginning of confinement. It's how long he stays in the community. Correct. All right. Correct. And so this is delegating to the probation officer, giving the probation officer the authority to approve. To shorten the time. Correct. Okay. And how does that injure your client? Here, the district court is, well, first it's problematic because it's unclear what hoops Mr. Christie must jump through in order to show improvement. What if the judge had simply said the same words? If the probation officer thinks you're making sufficient progress, he or she can recommend your release sooner than the 180 days. Then I would argue we'd be in a different situation because a recommendation is then going back to the district court and asking the district court to act. Right. So what he's saying, the probation officer, if I take your scenario, can do it on his own without having to jump, your client having to do anything but satisfy the probationary officer. But if he satisfies the probationary officer on which you're arguing for, he's going to have to wait until the district court signs off on it. So what's the injury? The injury here is that, I mean, this is a violation in that the district court is tasked, it shall decide what punishment is sufficient but not greater. He has. Well, he actually hasn't. To determine what is sufficient but not greater than necessary. So it's a bottom-up, what is sufficient, and a top-down, not greater than necessary. He's delegating to the probation officer to determine what is sufficient. Either way you're saying the probation officer is going to be the trigger. Either the trigger happens immediately upon the probation officer's satisfaction or it triggers a recommendation. Correct. Where the government can go in and argue that it shouldn't be, he shouldn't get out of community confinement. Correct. But at least then it would be the district court making the determination and not the probation officer. Well, what happens if the government under the probation officer says, okay, you've been here for 90 days, you really are showing progress, I think you can get out. You can be released from this community confinement starting next Monday. Okay. So where's his liberty interest being affected? His liberty interest is being affected because. . . Wouldn't the government, if they objected, still move in the district court and say, no, no, no, we object to this, Your Honor? Because part of the problem here is this is giving the probation officer the power to determine what Mr. Christie must do because the rest of the conditions imposed are vague and they're not really clear and they don't really address what is supposed to be happening in this confinement center. Under one condition, the court ordered outpatient mental health treatment. So outpatient mental health treatment is not something that occurs at this facility. So aside. . . Now you're attacking the conditions of confinement, not the probation officer's decision whether he has triggered, satisfied the probation officer that he should either recommend or he should do it unilaterally. I'm not attacking that condition. I'm using it as an example for how this puts Mr. Christie in a position to not know what he's supposed to do. Maybe I'm dense, but are we understanding that the man's in community confinement and he has to satisfy the probation officer either to recommend or to authorize whether he has satisfied the probation officer? That's the only difference. Whatever your client, Mr. Christie, has to do depends on satisfying the probation officer. Then the question is, having satisfied him by jumping through whatever hoops the probation officer thinks are necessary, now the probation officer either can authorize release next Monday or, say, will set up a hearing in the district court in two weeks, and if I'm right and the district court is persuaded, you'll get out earlier than 180 days. But meanwhile, you're going to sit around in your current circumstances until the judge rolls. Because that gives the probation officer essentially unfettered discretion to require the defendant to do virtually anything because there's no real guidelines here for what is progress, progressing toward what. He wasn't ordered to participate in a life skills program. He wasn't ordered to participate in any X, Y, Z program. It's just this amorphous show progress. Well, what is progress? Got it. Okay. Let's hear from the government and we'll give you a chance to respond. May it please the Court, my name is Retta Randall, and I'm Assistant U.S. Attorney for the District of Alaska. First of all, I believe that the standard of error that I portrayed in my brief was incorrect. The improper delegation of judicial authority to the probation officer was not raised at the district court level. I had thought it had, but when I carefully reviewed the record at the beginning, and there was a different defense attorney at that hearing, she made it very clear that they were objecting or wanted a chance to object to each of the different conditions of release. We went through all of those. She raised her concerns. They were all clarified. There were no objections. When we got to the community confinement instructions by Judge Burgess, and he was explaining to Mr. Sean Christie, these are the things I want you to do. This is what you're doing for six months. There was a peniological prong of this, but these are the things that I want you to accomplish for you to get out possibly sooner. There was no objection at that point in time by anyone that this was an improper delegation, and so I do think it is a plain error review, and the defendant has not been harmed. But regardless. The defendant remains in his community treatment facility? Yes, yes. There's been no recommendation by probation or anything of that sort? No, and it's not part of the record, but I did contact the probation officer. He is employed. Ironically, the probation officer considers the six months a flat-time sentence. He says things are going well and I'm not going to disturb it. And when would the 180 days finish? I believe it's mid-January. Okay. So we're like halfway there. But if the court doesn't find that there's plain error, what the judge was trying to do I think was in effect set up a treatment program, the probation officers do have discretion to decide when treatment can be ended, and that was the overall goal. He really wanted Mr. Christie to be separated from his father because of this incident. He wanted him to have some independent living skills. He wanted him to further his education. There were some very specific guidelines about what he wanted. And so I don't think it was an improper delegation, but I also think under plain error there's no harm to the defendant. Okay. Now do we – the written judgment does not include the unilateral language. But isn't it correct we're bound by the oral? Correct. Okay. So what do we do with the statement where it's juxtaposed, maybe unintentionally, but one is to recommend reduction of the term of probation, five years. A probation officer can do that, but he or she can approve your release sooner, and that sounds like a unilateral thing. So what do we do with that? I probably set up the termination of probation issue when a defendant is arguing for a lesser period of time as a matter of course if it's someone that I think needs some incentive, and this is something we were trying to do for this young man. I brought up to the court that more often than not, if restitution's been paid, if everyone's complied with everything, the United States goes to the probation officer and considers whether or not to recommend early termination of probation. The judge addressed that because I brought it up, I believe, but he was really more focused on this condition of supervised release and having it be in treatment programs. And even there's a First Circuit case, United States v. Melendez-Santana, 353 Fed 3rd 93, it's First Circuit of 2003. That's when the court improperly let the probation officer decide if someone needed to attend the drug treatment program, but in a footnote the court said, we consider the termination of the type of program the defendant must enroll in and when he may be discharged to be administrative details that may be delegated to the probation officer. Now I think the stay in the community confinement center was more as a treatment program to give Mr. Christie incentive to work with the people who were trying to help him. He was very upset about being sentenced and separated from his father, and that's how the hearing sort of ended. But the incentive was to be put on Mr. Christie to do some positive steps and therefore work with the probation officer and get out into the community and start living independently. I also want to address the restitution issue. Yeah, would you please? Yes, if I may. One of the things that I think is not clear from the record, and because the current counsel was not part of the underlying case, the amount of restitution is really predominantly focused, and Mr. Timmonson said this at the excerpts of record at page 59. The amount of restitution they're looking at are the days of when the offense started until Mr. Christie was arrested. We were looking for a criminal complaint. There was not the luxury of an indictment. There was not the luxury of getting subpoenas. We basically had a law firm being held hostage by constant telephone calls, harassing, vulgar, abusive, threatening telephone calls. And so Mr. Timmonson was working with the FBI. The law firm was fielding these calls. They were preserving the evidence. Mr. Timmonson was writing and transcribing some of the calls from Sean Christie because he has a bit of a list. And when the calls would get more aggravated or more frustrating, Mr. Christie would speak more quickly and then his voice would go up and the list would become more aggravated, which is why Mr. Timmonson, as a lawyer for the firm, at $200 an hour, at the objection of the defense counsel, had to transcribe some of those voicemails. But we needed to know the content accurately for the complaint to get the arrest warrant. So the attorneys of this firm were directly and proximately harmed by these calls. What's their loss if they're getting paid a salary regardless of how many hours they bill? What's the individual harm to the lawyer? That's why we did the motion for remand. The lawyers, the partners, I believe three of them are partners, two are associates. The partners, the firm lost productivity. It lost time that they could have billed for clients because these calls were coming almost 12 hours a day or 12 hours a day. So you're saying remand because it shouldn't have gone to the employees, it should go to the firm? And that's really what the evidence from Mr. Timmonson was, is that the money would come back to the general fund for the firm. It would be credited against everyone as work they had brought into the firm, but the money wouldn't go to them specifically. And that was my fault for not looking at how the order was written and trying to get it remedied in a more efficient fashion. Okay. I think it's, and you conceded, that really whatever order of restitution should not go to the individual lawyers but to the firm. Correct. Should our remand order be broader than that? I'm having trouble just conceptually with restitution here because I'm not sure I understand how the firm as a whole lost money. I understand that the firm did things that it would not otherwise have done in responding. I mean, these are abusive telephone calls. They're a total pain. I mean, I got all of that. But I'm trying to figure out how that calculates into restitution. Is restitution calculated based on how much money it cost the firm because it forwent other work, or is there some other basis for calculation? It was the basis of the billable hours that went toward addressing the phone calls. There was also a security meeting had to have been held with staff. There was a meeting with the FBI to reserve the tapes, but they weren't counting meetings after the arrest with the FBI. I would suggest, pursuant to your normal procedure, is sending it back on remand on an open record. I think then the actual date parameters can be more clarified and the actual hours that were spent doing specific work. But if we send it back, why was that question that you're now asking open record, why wasn't there an opportunity to show all of that? There was an opportunity to show that, and the other attorneys for the firm were made available. They weren't called by the defense. And the bottom line is all of the parties were trying to keep the publicity about the calls and the content out of the media. The Associated Press was there always, and we were trying to protect the privacy of the firm and the privacy of Sean Christie. He lost his job because of publicity from this case. With Sarah Palin involved, there was always something in the paper, and we were trying to lowball all the negative content, which is why I think the restitution hearing, I think, is sufficient on the record. It shows the number of billable hours that had to be spent dealing with these calls and the amount of constant calls coming in. I mean, while the FBI agent is recording calls from a voicemail, the front desk is ringing constantly. It just keeps going on and on and on. And so it's total disruption of a law firm, which is what Sean Christie said specifically to Mr. Timmonson. I'm going to shut you down. You pay me a million dollars or we're going to make sure no one can get in touch with you. And so it's a loss of billable hours, which is the basis of the restitution. Thank you. Thank you. Would you like one minute? As to the restitution issue, counsel noted that other witnesses were available, not called. The government has the burden of proof in a restitution setting. It wasn't the defense's responsibility to call these witnesses to testify. If the government didn't meet their burden, they shouldn't get remand on an open record to prove something they should have proved the first time around and weren't able to. Let me ask you this. If we remanded on the current record, what happens? Do we just say, well, the order doesn't go to the individual, but it goes to the firm and the amount remains unchanged? Is that what happens? I believe that that is what the government is asking for. Well, what are you asking for? I'm asking you to find that under either theory, the remand order is improper. And I briefed this in my opening brief, that under a loss production theory, that the entire firm lost their argument, that the entire firm lost funds, there is no case law to support that. And I cited case law that actually says the contrary. For whatever reason, the government opted not to address the alternative theory in their answering brief. So I have briefed both. So your argument is in order for the firm to recover restitution, it needs to show that it did not build things that it otherwise would have built. And you're saying it doesn't matter that they spent all this time and they would have billed that time to an ordinary client in this fashion? I believe that they have not met their burden of proof of establishing that the law firm actually suffered a specific financial loss. For example, they talk about- No, I got that. So I'm trying to figure out just the theory of restitution here. Your theory is that the law firm met all of its obligations, it serviced all of its clients, it did everything it otherwise was going to do, but, of course, the law firm also had to spend a lot of extra hours responding to these phone calls, dealing with them up front, transcribing and so on. And you're saying that's not compensable in restitution. Is that right? That's correct, yes. Because? Because it's not an actual loss. There has to be an actual loss of funds. And if you have been able to-if you've got all your income coming in, you have not-if they hired security and paid a fee- How do you know people tried to call and couldn't get through or got tired of waiting for unanswered calls? What if your office were inundated with calls like that and you didn't get any incoming other than harassing phone calls for 48 hours? Would you say there was no- There was no loss like that established at the evidentiary hearing, no. There wasn't. Okay. Thank you very much. Thank both sides for their argument. The case of United States v. Christie now submitted for decision.
judges: Dearie, Fletcher, Fisher